COURT OF APPEALS
EIGHTH DISTRICT OF TEXAS
EL PASO, TEXAS



| | | |
|---|---|---|
| WC 4TH AND RIO GRANDE, LP, | § | No. 08-22-00225-CV |
| Appellant, | § | Appeals from the |
| v. | § | 345th Judicial District Court |
| LA ZONA RIO, LLC, | § | of Travis County, Texas |
| Appellee. | § | (TC# D-1-GN-22-000195) |

## MEMORANDUM OPINION

This is the second of two companion opinions we issue today. The first opinion, which is similarly styled, is No. 08-22-00073-CV.

## I. THE FACTS UNDERLYING THE FIRST APPEAL

As we explained in our first opinion, a Harris County district court entered an order appointing attorney Seth Kretzer as a receiver to collect on a judgment owed by World Class Capital Group (WCCG) and Great Value Storage (GVS) to Princeton Capital Corporation (the Receivership Order). In his receiver capacity, Kretzer entered an appearance in a lawsuit pending in a Travis County district court where WC 4th and Rio Grande, LP (Rio Grande, LP) had sued Appellee La Zona Rio, LLC (La Zona Rio) in an attempt to stop La Zona Rio from foreclosing on a building Rio Grande, LP owned. In his notice, Kretzer stated he was replacing the attorney for

Rio Grande, LP, which he contended was a "subsidiary" of WCCG but filed no evidence in support thereof.

Rio Grande, LP then filed an unsworn motion challenging Kretzer's authority to act on the partnership's behalf, arguing that it was neither a subsidiary of WCCG nor an entity owned or managed by WCCG, but a separate legal entity. The trial court did not rule on the motion. Instead, the trial court impliedly found that Kretzer had the authority to act on the partnership's behalf and granted a joint motion to dismiss Rio Grande, LP's lawsuit based on the representations made by Kretzer and La Zona Rio's attorney that the parties had resolved their claims against each other. Rio Grande, LP thereafter filed a motion seeking reconsideration of the dismissal order, providing documentation from its tax records indicating that Rio Grande, LP consisted of a general partner (WC 4th and Rio Grande GP, LLC) with a 25% interest in the partnership and two limited partners with a significant interest in the partnership: Sangreal Investments, II, LLC and Flash Property Management, LLC, which were each listed as having a 33.75% interest in the partnership. After the motion was overruled by operation of law, Rio Grande, LP appealed from the order dismissing its lawsuit, which was docketed in this Court as No. 08-22-00073-CV.[1]

## II. THE FACTS UNDERLYING THE SECOND APPEAL

Shortly thereafter, acting pursuant to the settlement agreement he had negotiated in Rio Grande, LP's first lawsuit, Kretzer signed a warranty deed as the "Court-Appointed Receiver for the property of World Class Capital Group, LLC" in which he transferred the subject building to La Zona Rio as the Grantee, naming Rio Grande, LP the Grantor. The deed stated that the transfer was "in lieu of foreclosure" and in consideration of $10. Rio Grande, LP then filed a

---

[1] That case was transferred from our sister court in Austin pursuant to a docket equalization order issued by the Supreme Court of Texas. *See* TEX. R. APP. P. 41.3.

second lawsuit against La Zona Rio, which is the subject of the present appeal, bringing claims of quiet title and trespass to try title and seeking a declaration that it was the true owner of the property. Kretzer filed a notice of nonsuit of Rio Grande, LP's second lawsuit, stating that he was acting in the capacity as the "court appointed Receiver for World Class Capital Group, LLC, Manager of WC 4th And Rio Grande, LP." He thereafter moved for the entry of an order dismissing Rio Grande, LP's lawsuit on the partnership's behalf, again stating that he was acting as the receiver for WCCG. Rio Grande, LP filed a motion challenging Kretzer's authority, contending that it was a separate entity from WCCG, relying in part on its partnership agreement demonstrating that Sangreal Investments, LLC and Flash Property Management, LLC had made capital contributions of $2,250,000 each to the partnership and that a third limited partner existed that had a 7.5% interest in the partnership and had made a $500,000 contribution thereto.[2]

Kretzer presented some evidence that WCCG was linked to Rio Grande, LP as follows.

1. Natin Paul is the president, sole member, and manager of World Class Capital Group, LLC.

2. World Class Capital Group, LLC is the sole member and manager of World Class Real Estate, LLC.

3. World Class Real Estate, LLC is the sole member of WC 4th and Rio Grande GP, LLC.

4. WC 4th and Rio Grande, LP was created as a partnership between WC 4th and Rio Grande GP, LLC, as the general partner and the three other limited partners identified above.

---

[2] We note that while the partnership's tax records refer to Sangreal as "Sangreal Investments II, LLC," the partnership agreement refers to it as "Sangreal Investments, LLC."

The trial court denied Rio Grande, LP's motion and entered an order granting Kretzer's motion for entry of dismissal, dismissing Rio Grande, LP's lawsuit with prejudice. Rio Grande, LP filed a notice of appeal from that order, which was docketed in this Court as 08-22-00225-CV.[3]

## III.   THE REMAND OF THE FIRST APPEAL

Both appeals center on the question of whether Kretzer had the authority to take over the management of Rio Grande, LP's cause of action and to transfer the partnership's property as part of his collection efforts. In our first opinion, we concluded that the record did not support the trial court's implied finding that Kretzer had the authority to act on Rio Grande, LP's behalf in his receiver capacity. As we explained in that case, even if Rio Grande, LP's general partner was affiliated with WCCG, a judgment creditor of an individual partner has no right to obtain possession of or otherwise exercise "legal or equitable remedies" with respect to a limited partnership's property when collecting on that judgment. TEX. BUS. ORGS. CODE ANN. § 153.256(f) (the "creditor of a partner or of any other owner of a partnership interest does not have the right to obtain possession of, or otherwise exercise legal or equitable remedies with respect to, the property of the limited partnership"); *see also Pajooh v. Royal W. Investments LLC, Series E*, 518 S.W.3d 557, 563 (Tex. App.—Houston [1st Dist.] 2017, no pet.) (recognizing that a "judgment creditor may not obtain possession of, or otherwise exercise legal or equitable remedies with respect to, the property of the limited partnership") (internal quotation marks omitted).

Instead, a judgment creditor of an individual partner may only seek to satisfy the judgment from any distributions that the individual partner has received or is owed and must do so through

---

[3] This case was also transferred from our sister court in Austin, and we decide it in accordance with the precedent of that court to the extent required by TEX. R. APP. P. 41.3.

a charging order.[4] *See Pajooh*, 518 S.W.3d at 562 (recognizing that entry of a charging order attaching a partner's distributions is the "exclusive remedy" by which a partner's judgment creditor may "satisfy a judgment out of the judgment debtor's partnership interest") (citing TEX. BUS. ORGS. CODE ANN. § 153.256(d) ("The entry of a charging order is the exclusive remedy by which a judgment creditor of a partner or of any other owner of a partnership interest may satisfy a judgment out of the judgment debtor's partnership interest")); *see also In re Prodigy Servs., LLC*, 2014 WL 2936928, at *5 (recognizing that a charging order is the exclusive remedy by which a partner's judgment creditor may satisfy a judgment out of judgment debtor's partnership interest) (citing *Stanley*, 314 S.W.3d at 664).

We recognized in our opinion that certain limited exceptions to this rule allow a court to issue a turnover order of a partnership's assets, i.e., when the debtor is the only member of the partnership, no other partner's interests are at stake, and the order will not interfere with the entity's business—as the purpose of requiring a charging order is to avoid disruption to the partnership's business and to protect the other partners' interests. *See Heckert v. Heckert*, No. 02-16-00213-CV, 2017 WL 5184840, at *7-9 (Tex. App.—Fort Worth Nov. 9, 2017, no pet.) (mem. op.) (upholding turnover order directing ex-husband to turn over to ex-wife assets he placed in a non-operating LLC and partnership in which he was the sole member and partner, as there would be no disruption

---

[4] A charging order charges "the partnership interest of the judgment debtor to satisfy the judgment" by giving a judgment creditor "the right to receive any distribution to which the judgment debtor would otherwise be entitled in respect of the partnership interest." TEX. BUS. ORGS. CODE ANN. § 153.256(a), (b). A charging order constitutes a lien on the judgment debtor's partnership interest, but the judgment creditor has no right to foreclose on the lien. *Id*. § 153.256(c). Importantly, it does not entitle a creditor to participate in the partnership or compel distribution of profits. *Pajooh v. Royal W. Investments LLC, Series E*, 518 S.W.3d 557, 563 (Tex. App.—Houston [1st Dist.] 2017, no pet.) (citing *Stanley v. Reef Sec., Inc.*, 314 S.W.3d 659, 664-65 (Tex. App.—Dallas 2010, no pet.). However, a Chapter 31 turnover and receivership order may be used to monitor partnership distributions and effectuate a charging order. *Id.* (citing *Stanley*, 314 S.W.3d at 664–65; *see also Goodman v. Compass Bank*, No. 05-15-00812-CV, 2016 WL 4142243, at *11 (Tex. App.—Dallas Aug. 3, 2016, no pet.) (mem. op.) (affirming order requiring turnover of property that included present and future rights to proceeds from limited partnerships, LLCs, and other corporate entities)).

to the operating business or detriment to other individuals) (citing Michael C. Riddle, et al., *Choice of Business Entity in Texas*, 4 Hous. Bus. & Tax L.J. 292, 318 (2004) ("[T]he charging order developed as a way to prevent the creditor of one partner from holding up the business of the entire partnership and causing injustice to the other partners."). But we noted that the record in the first case reflected that Rio Grande, LP was a partnership with at least two other partners possessing a substantial interest in the partnership. And we concluded that absent evidence the other partners were themselves connected to WCCG, the Receivership Order could not have authorized Kretzer to "take possession" of Rio Grande, LP's cause of action and its property as part of its collection efforts to satisfy WCCG's debt. We therefore reversed the trial court's judgment in that case and remanded the matter to the trial court for further proceedings to reconsider whether Kretzer had the authority to appear and act on behalf of Rio Grande, LP as he did.

## IV.  THE REMAND IN THIS CASE

In the present case, the record suffers from this same deficiency. Although Kretzer supplied additional evidence in the trial court that more clearly links Rio Grande, LP's general partner to WCCG, the record does not support a finding that the other limited partners in the partnership— whose interests were at stake in both proceedings—had any relationship to WCCG. And as we noted in the first opinion, a judgment creditor may not seize the assets of a legitimate partnership to the detriment of other partners and the partnership itself to satisfy an individual partner's judgment debt. Accordingly, we reverse the trial court's order in this case and similarly remand to the trial court to reconsider the issue of Kretzer's authority in light of our analysis.[5]

---

[5] We note that Kretzer also filed a motion to dismiss this appeal, claiming that he alone had the authority to file the appeal on Rio Grande, LP's behalf, given his effective takeover of the partnership's management. In light of our disposition of the appeal, we deny the motion as moot.

LISA J. SOTO, Justice

May 25, 2023

Before Rodriguez, C.J., Palafox, and Soto, JJ.